## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MCKINLEY HUNTER<br>17 East N. Maple Avenue, Apt. 18<br>Merchantville, NJ 08109 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff,<br>v. | : <br> : <br> : | No. |
| MCKESSON CORPORATION<br>1 John Henry Drive<br>Robbinsville, NJ 08691<br>and<br>INTERNATIONAL BROTHERHOOD OF<br>TEAMSTERS, d/b/a WAREHOUSE<br>EMPLOYEES' UNION, LOCAL 169<br>1363 W. Cheltenham Avenue<br>Elkins Park, PA 19027 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

## CIVIL ACTION COMPLAINT

McKinley Hunter, (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      This action has been initiated by Plaintiff against Defendants for violations of the Family and Medical Leave Act ("FMLA - 29 U.S.C. §2601 *et seq*.), § 301 of the National Labor Relations Act ("NLRA"), and the New Jersey Law Against Discrimination ("NJ LAD" - N.J.S.A. 10:5-1, *et. seq*.). Plaintiff asserts, *inter alia*, that he was unlawfully discriminated against, retaliated against, and terminated from his employment (among other violations, including experiencing a breach of duty of representation by Plaintiff's union). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

1

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress of such federal statutes. There would alternatively be diversity jurisdiction for this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity and Plaintiff seeks in excess of $75,000.00 exclusive of costs and interest.

3.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the District of New Jersey for this action.

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult individual, with an address as set forth in the caption.

7.      Defendant McKesson Corporation (*hereinafter* "Defendant MC") manufactures, distributes, and sells pharmaceuticals and medical supplies throughout the United States and internationally through various segments and divisions.

2

8.      Defendant International Brotherhood of Teamsters, d/b/a Warehouse Employees' Union, Local 169 (*hereinafter* "Defendant IBT") is one of the largest labor unions in the United States. This Washington-based non-profit entity provides for and serves over 600 local chapters throughout the United States, Canada, and Puerto Rico. Defendant IBT manages, oversees, advertises for and operates Local 169 doing business as Warehouse Employees' Union.

9.      At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff physically worked for Defendant MC in New Jersey, and Plaintiff was a union member in good standing at all relevant times herein with Defendant IBT.

12.     In total, Plaintiff – a 40-year-old male - was employed with Defendant MC for approximately 15 years. He was a union member throughout his tenure with MC through Defendant IBT.

13.     Plaintiff was ultimately terminated by Defendant MC in November of 2017, as discussed *infra*, but had for *many* years leading up to his termination:

> (a) Sought and been approved for intermittent leave under the Family and Medical Leave Act ("FMLA");
>
> (b) Taken and been granted periodic time off from work for his disabilities (a/k/a "intermittent" leave); and
>
> (c) Provided continual medical documentation to all applicable management of Defendant MC (and its administrator) outlining his need for intermittent medical time off from work and that his disabilities were "permanent."

3

14.     In light of the FMLA permitting an employee to take up to 12 weeks off from work per year on an intermittent, block or reduced-reschedule basis (the 3 types of federally-protected medical leave available under the FMLA), Plaintiff did not exceed his protected leave allotment. He merely missed federally-protected time each year from work for qualifying disabilities, predominantly permanent back problems and complications.

15.     Plaintiff's physicians had provided medical paperwork and FMLA certifications identifying in addition to the seriousness of Plaintiff's disabilities and their permanency, that Plaintiff on an "estimated" frequency could have approximately 8 episodes per month requiring absenteeism. Of course, this was only an estimate that was at times accurate or used less.

16.     Not only were Plaintiff's approximate 8 absences and/or 8 episodes federally protected under the FMLA, they *were also* a reasonable accommodation under the New Jersey Law Against Discrimination ("NJ LAD").[1] This FMLA and reasonable accommodation approval had been in place *for years*.

17.     In or about 2017, it appeared that Defendant MC's management had a perception – through comments and actions taken – that employees as a whole were using too much FMLA and intended to crackdown on such usage (due to frustration with FMLA in general as opposed to any specific information of misuse).

18.     In the summer of 2017, Plaintiff had most recently provided an updated FMLA physician's certification consistent with prior such requests and certifications. Plaintiff's FMLA certification, as in the past, was certified him for his normally federally-protected intermittent time off from work for a period of 6 months.

---

[1] *See e.g. Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156 (3d Cir. 2017)(intermittent leave under the FMLA may also constitute a reasonable accommodation under anti-discrimination law(s)).

19.     By letter dated June 29, 2017, Plaintiff was informed through Defendant MC's third-party FMLA administrator (Matrix Absence Management) that he was now being required to get a "2nd Opinion Evaluation" . . . "to validate the amount of time that [he] might need to care for [his] health condition."

20.     Plaintiff was directed to undergo his "FMLA 2nd Opinion Exam" on or about July 28, 2018 with one Dr. Michael Ziev who holds himself out publicly as a doctor practicing *family medicine* (a non-specialist). When Plaintiff met with Dr. Ziev, he <u>was shocked</u> as:

    (a) Plaintiff went to what he presumed would be a normal doctor's office but showed up at a row home in Philadelphia, had difficulty determining where to go within the structure, and met with Dr. Ziev in a basement of the row home that was musty, disorganized and a poor attempt at an office setting;

    (b) Dr. Ziev had not pre-ordered any x-rays, MRIs or any medical files for Plaintiff before his visit with Plaintiff;

    (c) Dr. Ziev in total only met with Plaintiff for approximately 15 minutes;

    (d) Dr. Ziev did not perform any diagnostic testing, any x-rays, any MRI, and did not physically examine Plaintiff;

    (e) Dr. Ziev asked Plaintiff some questions and glanced at some documents Plaintiff had with him at the time from past doctor's visits with his normal physicians; and

    (f) Dr. Ziev told Plaintiff they think you miss too much time and probably don't want you there anymore but thanked them both for coming (Plaintiff and his wife).

21.     Both Plaintiff and Plaintiff's wife (Alisa Hunter) were present for the short approximate 15-minute encounter with Dr. Ziev. They both left astonished as to how that could possibly be any type of "FMLA 2nd Opinion."

22.     In what appeared to be a clear, coordinated effort to limit Plaintiff's FMLA absenteeism *without any medical basis*, Plaintiff was thereafter informed by letter dated on or about August 29, 2017 that Dr. Ziev estimated Plaintiff needs to miss time from work at "four episodes per month, two days per event." This was a reduction from Plaintiff's multi-year history

of 8 episodes per month under the FMLA as provided by his regular physicians who **actually examined him** continually.

23.     In addition to the 2nd opinion examination being a complete charade as aforesaid, Defendant MC violated the FMLA by requiring Plaintiff to attend a 2nd Opinion evaluation in the first place.  A 2nd Opinion may only be mandated where an employer can demonstrate "reason to doubt the validity of a medical certification" originally provided by an employee.[2]

24.     Defendant MC's third-party administrator, Matrix, also *impermissibly* **and** *illegally* shifted Defendant MC's burden upon Plaintiff under the FMLA.  In particular, Defendant MC provided Plaintiff with 10 days to object to the 2nd Opinion stating it would be binding if no objection was timely received. This was set forth in Defendants' aforesaid August 29, 2017 correspondence to Plaintiff. This is not lawfully permitted.

25.     Plaintiff had already set forth his objection to the 2nd Opinion by providing a *directly conflicting* certification, *the same which had been provided for years* by qualified, regular treating physicians of Plaintiff (who, again, actually examined and reviewed records of Plaintiff). Defendant MC was instead pursuant to 29 C.F.R. 825.307(c) *required* to schedule Plaintiff for a third, binding physician if Defendant MC wished for its 2nd Opinion to be adopted. Plaintiff's sole obligation under 28 C.F.R. 825.307(C) was to "act in good faith" with respect to seeing and scheduling a specialized physician for a third, binding opinion.

26.     Defendant MC's administration of the FMLA with respect to Plaintiff was literally atrocious, as Defendants repeatedly violated FMLA regulations. But Defendant MC's knowing

---

[2] *See* 29 C.F.R. 825.307(b)(1); *see also Humility of Mary Health Partners v. Teamsters Local Union* No. 377, 517 F. App'x 301, 303 (6th Cir. 2013)(affirming wrongful termination arbitration holding against employer for sending employee to FMLA 2nd opinion exam without legal basis *after approving the same FMLA absenteeism for years* and separately explaining FMLA regulations clearly expect any binding 2nd or third opinion to be based upon a full medical record and review, not an incomplete examination).

violations of the FMLA and anti-discrimination law(s) did not cease as of the foregoing – but rather – continued directly resulting in Plaintiff's unlawful termination from employment.

27.     Plaintiff was ultimately terminated from Defendant on or about November 27, 2017.  His termination violated anti-discrimination law(s) and the FMLA as follows:

(A) It was known to Defendant MC's management and FMLA administrator that Plaintiff had serious back problems; and as a result, he did material handling that was not in the shipping area (as the shipping area required more strenuous work and lifting). This was a known accommodation that Plaintiff needed and had been provided pre-FMLA 2nd opinion;

(B) After Plaintiff was given diminished permission to use FMLA from the timeframe of September of 2017 going forward, Defendant MC failed to properly accommodate Plaintiff and had him fill in for shipping employee shortages causing significant exacerbation of his back problems (due to the far more strenuous work); and

(C) Defendant MC then promptly terminated Plaintiff for missing *slightly* more time than Plaintiff was estimated to miss under the 2nd Opinion *but less time* than certified as an estimate of potential FMLA time by Plaintiff's own physician(s).

28.     Plaintiff's termination was thus *clearly unlawful* for the following factual reasons:

(A) Even assuming the farce 2nd opinion obtained by Defendant MC was legally permissible, that estimate of limited FMLA time off from work *only pertained* to a different, less strenuous position Plaintiff worked within *at the time* of the 2nd Opinion;

(B) Regardless of whether Plaintiff's certification or the 2nd Opinion certification were utilized, if an employee misses slightly more or less time than set forth in an FMLA certification or 2nd Opinion, that is **not** a legal basis to terminate an employee.  It is well established nationally that doctors only provide "estimates" of time an employee may miss from work for FMLA and that employees often use slightly less or more than "estimated;"[3]

(C) Plaintiff was terminated for using FMLA-qualifying time off from work despite having not exhausted his 12-month FMLA entitlement; and

---

[3] *See e.g. Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 841 (7th Cir. 2014)(explaining physicians only give "estimates," and it can constitute discrimination or retaliation to terminate an employee for merely exceeding absences estimated in an FMLA certification.

(D) Plaintiff was terminated based upon an FMLA 2nd Opinion that was not permissibly obtained with proper basis – and separately – Plaintiff was terminated despite not having been sent to a third binding (neutral) examination due to conflicting certifications.

29.     The above reasons for Plaintiff's unlawful termination are not exclusive, as they are just examples of how egregious Defendants' actions were in terminating Plaintiff in violation of the FMLA and anti-discrimination law(s).

30.     Moreover, even assuming Plaintiff had exhausted or used up all allocated FMLA time off from work, that does not alleviate Defendant MC from interacting in good faith with Plaintiff about his need for a reasonable medical accommodation (protected under a separate law). Plaintiff had medically accommodated for years using the same or similar absenteeism for which he was directly terminated for on account of his disabilities.

## PLAINTIFF'S § 301 Hybrid Claim Under the NLRA

31.     Plaintiff's prior allegations relate to his unlawful termination from Defendant MC. However, Defendant IBT breached its duty of fair representation as set forth herein.

32.     Plaintiff was informed by Defendant IBT, its management, and its counsel that he had a very good case to prevail at arbitration.

33.     Defendant IBT had the discretion to elect whether or not to accept Plaintiff's case for arbitration, as Defendant IBT declines to take the majority of grievances filed by employees to arbitration.

34.     Because Plaintiff's case seemed so strong, Defendant IBT accepted Plaintiff's case for arbitration and agreed to take his case to a trial for breach of the collective bargaining agreement ("CBA") by Defendant MC.

35.     In particular, Defendant IBT assured Plaintiff that his termination was not sufficiently for cause as defined and permitted under the CBA. Thus, Plaintiff was assured by

Defendant IBT that it seemed clear Defendant MC violated the CBA and committed a breach of contract by terminating Plaintiff's employment.

36.     Plaintiff relied upon many assurances he was likely to prevail in his arbitration case against his employer through Defendant IBT, and as a result, did not seek outside counsel for any other potential discrimination or retaliation claims.

37.     However, by letter dated on or about October 18, 2018, Plaintiff was informed by Defendant IBT that his arbitration was denied by the arbitrator. More specifically, the letter advised Plaintiff that:

> [T]he Arbitrator in your discharge case denied the grievance as inarbitrable because it was not advanced to arbitration within the contractual time period. It is a decision that the Union strongly disagreed with as the issue of a grievance timeliness was never raised in any arbitration between McKesson and Local 169 and the parties never enforced time constraints prior to this case . . . Nonetheless, the Arbitrator took an extreme position and denied the grievance.

38.     Defendant IBT sent Plaintiff a letter addressing him as "Brother Hunter" and made it seem completely outlandish and a total shock that an employer would argue a union has to submit a timely request for arbitration within a deadline mandated under the CBA. Nothing can be further from the truth, as adherence to deadlines of filing timely legal claims is often enforced, is critical, and Defendant IBT attempted to knowingly mislead and assuage Plaintiff's concerns with its failure to properly file or timely file his arbitration in hopes Plaintiff would not seek redress.

39.     Plaintiff only learned of Defendant IBT's failure to properly and timely file his arbitration in October of 2018. He relied on his Union, its management, and its counsel for expertise in properly arguing, filing, and handling all aspects of his union claims, grievances and of course - - his arbitration. This is of course why he paid significant dues to his union for over a decade, to help him when he finally needed legal representation through his union.

40.     It is well established that where a union: (a) agrees to pursue a case through arbitration there is a presumption of presumed merit; and (b) its failure to file a timely arbitration constitutes a breach of its duty of fair representation.[4]

41.     As to Defendant IBT's misconduct, Defendant IBT did not inform Plaintiff of some innocent error, mailing mistake, or attempted compliance with contractual filing deadlines. Instead, Defendant IBT *conceded* reckless disregard and a breach of duty to Plaintiff by specifically authoring a letter to Plaintiff that it – as a matter of practice and policy – does not timely file arbitrations despite its contractual obligation and instead relies on the good will of employers to not enforce legal contract defenses. This was frankly absurd, as was Defendant IBT's effort to conceal its misconduct after the fact by lying to Plaintiff that employers such as Defendant MC never enforce a timeliness requirement for filings of legal claims or arbitration.

42.     For the reasons set forth herein, Plaintiff would have prevailed against Defendant MC in a union arbitration, as having not been terminated for sufficient cause. *See also Humility of Mary Health Partners v. Teamsters Local Union* No. 377, 517 F. App'x 301, 303 (6th Cir. 2013)(affirming wrongful termination in similar case as to Plaintiff **in union arbitration** holding against employer for sending employee to FMLA 2nd opinion exam without legal basis ***after approving the same FMLA absenteeism for years*** and separately explaining FMLA regulations clearly expect any binding 2nd or third opinion to be based upon <u>a full medical record and review,</u> not an incomplete examination).

---

[4] *See e.g. Dutrisac v. Caterpillar Tractor Co.,* 511 F. Supp. 719, 727 (N.D. Cal. 1981)(Awarding legal fees against the union due to the recklessness of failing to file a timely arbitration which constitutes a breach of duty of fair representation in the 9th Circuit where the union agreed to pursue arbitration, indicating its belief in the merit of Plaintiff's legal claims); *Ruggirello v. Ford Motor Co.,* 411 F. Supp. 758, 760-61, 92 LRRM 2228 (E.D. Mich. 1976) (union breached duty when it never instituted formal grievance on employee's behalf, relying instead on informal adjustment methods, and grievance was ultimately rejected as being untimely); *Foust v. International Brotherhood of Electrical Workers,* 572 F.2d 710, 714-16, 97 LRRM 3040 (10th Cir. 1978), rev'd on other grounds (evidence would support jury finding that untimely filing of grievance was "arbitrary, unreasonable and a breach of duty); *Foster v. Bowman Transp. Co.,* 562 F. Supp. 806, 818 (N.D. Ala. 1983)(same).

43.     Plaintiff thus would prevail in his hybrid claim herein against his union for breach of the CBA and against his union (Defendant IBT) for breach of duty of representation.

## Count I
## Violations of the Family and Medical Leave Act ("FMLA")
### (Interference & Retaliation)
### - Against Defendant MC Only -

44.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45.     Plaintiff was at all times relevant an eligible employee under the FMLA for leave in each year of his employment.

46.     Plaintiff had his FMLA rights violated through interference, discrimination, and retaliation by *inter alia*: (1) being denied full use of FMLA; (2) being subjected to a 2nd Opinion; (3) being dissuaded from use of FMLA; (4) Defendant not following technical regulations of the FMLA; (5) Defendant placing too many burdens upon Plaintiff that were impermissible or illegal; (6) disciplining, admonishing and terminating Plaintiff for use of FMLA; and (7) all other actions that can be construed from the factual allegations in this lawsuit.

47.     These actions as aforesaid constitute interference, discrimination and retaliation prohibited by the FMLA.

48.     Defendant MC's actions of attempting to crack down on FMLA, sending employees to a farce exam, and intentionally not adhering to clearly established FMLA regulations or engaging in any interactive process with Plaintiff demonstrates clear willfulness for liquidated damages as well.

### Count II
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
### (Discrimination, Failure to Accommodate, and Retaliation)
### - Against Defendant MC Only -

49.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.     Plaintiff was: (a) denied reasonable accommodations of not having to work in the shipping department, not being given additional absences as a medical accommodation leading to his termination, and denied interactive dialogue; (b) terminated in retaliation for his requested accommodations or voiced opposition to mistreatment for use of medical absenteeism; and (c) discriminated against in his non-accommodation and termination for his actual, perceived or record-of health problems / disabilities.

51.     These actions as aforesaid constitute violations of the New Jersey Law Against Discrimination.

### Count III
### Hybrid Claim Under Section 301 of the LMRA, 29 U.S.C. § 185
### - Against Both Defendants -

52.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53.     Plaintiff's union (Defendant IBT) conducted itself dishonestly, attempted to mislead Plaintiff and conceal its misconduct in not timely filing an arbitration for Plaintiff, and knowingly breached its duty of fair representation.

54.     Where a union breaches its duty of fair representation as herein, a plaintiff may pursue to separate claims in federal court as against his union and separately against his employer in what is commonly known as a *hybrid § 301 claim* for breach of his CBA (due to his union's failure to represent him). *See Roe v. Diamond*, 519 F. App'x 752, 756 (3d Cir. 2013).

55. For reasons outlined in this Complaint, Plaintiff's union breached its duty of fair representation, attempted to conceal it, and Plaintiff would have been successful against his employer had his union not breached its duty of fair representation.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: January 3, 2019

14